**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| _____ ) | |
| WESTERN RADIO SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 21-1623 |
| ) | |
| THE UNITED STATES, ) | Filed: February 19, 2025 |
| ) | |
| Defendant. ) | |
| _____ ) | |

**OPINION AND ORDER**

       In this takings action, Plaintiff Western Radio Services, Inc. ("Western Radio") asserts that the Government effectuated a taking of its radio service tower facilities in Oregon without just compensation. The tower facilities in question were located on federal land, and Western Radio operated them pursuant to leases with the United States Forest Service ("Forest Service"). The Forest Service either revoked or did not renew these leases, and subsequently Western Radio failed to take down the towers at issue, which it was required to do both by operation of the leases and by regulation. As a result, the Forest Service changed the locks on the tower facilities to bar Western Radio from accessing them. Ultimately, the Forest Service physically removed the tower facilities from the sites. Before the Court is the Government's Motion for Summary Judgment. The Government argues that Western Radio had no cognizable property interest in the tower facilities at the times of the alleged takings, and thus the Government is entitled to judgment as a matter of law. For the reasons outlined below, the Court **GRANTS** the Government's Motion.

# I.     BACKGROUND

## A.     Factual Background

For several decades, Western Radio constructed and operated radio service tower facilities on federal land in central Oregon.  *See* Gov't's App. 1–44, ECF No. 39–1 (hereinafter "GA").[1] There are four federal land sites at issue in this case—Walker Mountain, Round Mountain, Gray Butte, and Sugar Pine Butte—at which Western Radio constructed tower facilities and conducted business pursuant to Communications Leases with the Forest Service.  *Id.*

From the early 2000s onward, there were several disputes between the Forest Service and Western Radio about the various leases, particularly concerning Western Radio's noncompliance with certain lease terms.  GA 77, 152, 166, 175, 232.  Beginning in 2010, the Forest Service declined to renew or revoked the leases between Western Radio and the Forest Service at each site. GA 77–78, 156–57, 164–69, 178–79.  Litigation ensued.  GA 51–57, 85–89, 187–98.  The Court outlines the history of the four sites, their corresponding leases, and their litigation history in turn.[2]

*Walker Mountain*.  Western Radio and the Forest Service entered into the initial Walker Mountain lease in 2000.  GA 1.  The lease permitted Western Radio to use a specific parcel of land on Walker Mountain to construct and operate a radio communications facility, including a radio service tower.  GA 59.  In 2006, Western Radio proposed replacing the tower with a new one; and in 2009, the Forest Service approved this tower replacement subject to technical review.  GA 59–

---

[1] The Government filed its Appendix as five separate attachments to its Motion for Summary Judgment.  For ease of reference, citations to the Government's Appendix refer to the consecutively paginated numbers preceded by the letter "A" beginning on the fifth page of ECF No. 39-1 and ending on the last page of ECF No. 39-5.

[2] The Court's recitation relies in part on findings made in prior litigation related to the parties' leases and their conduct at the four sites.  As the lawfulness of the parties' actions were determined by the district courts in those cases, this Court is not permitted to re-examine those questions here.

60.  In August 2010, without final authorization from the Forest Service, Western Radio built the new tower.  GA 61.

Asserting that the 2010 improvements at Walker Mountain were not authorized, the Forest Service sued Western Radio in 2011 for breach of contract, negligence *per se*, and trespass in the United States District Court for the District of Oregon ("2011 District Court Action").  GA 51–57. On August 29, 2012, the district court granted the Forest Service's motion for summary judgment as to its breach of contract and trespass claims.  GA 58–70.  On May 3, 2013, the court ordered as a remedy for the trespass claim that Western Radio remove all trespassing structures (the new tower, tower base, concrete pad, and adjoining building) by no later than August 15, 2013.  GA 71–76.  However, the court declined to grant the Forest Service's requested relief for the breach of contract claim—cancellation of the lease—because "the parties had specifically agreed in their lease to an administrative revocation procedure should Western Radio fail to comply with the lease terms."  GA 72.  Western Radio appealed the district court's decision, and on July 5, 2013, the court stayed its judgment pending appeal.  GA 137–38  (amending and staying judgment).

Meanwhile, on February 4, 2013, the Forest Service revoked Western Radio's lease.  GA 77–78.  In its lease revocation decision, the Forest Service notified Western Radio that it was "required to remove all structures and improvements, including but not limited to those previously authorized and those found to be in trespass, from the Walker Mountain Communication Site and restore the site as near as reasonably possible to its original condition by July 1, 2013."  GA 77. The letter further provided that Western Radio's failure to remove all structures and improvements in trespass would result in their becoming "the property of the United States," in which case they "may be sold, destroyed, or otherwise disposed of without any liability to the United States," consistent with section V.B. of the lease and 36 C.F.R. § 251.60(i).  *Id.*  On March 20, 2013,

3

Western Radio appealed the Forest Service's decision to revoke the lease. GA 81. In June of the same year, Western Radio's first- and second-level administrative appeals of the revocation were denied. GA 81, 83. The second-level appeal constituted the agency's final administrative determination. GA 96–97.

On July 15, 2013, the Forest Service filed a second complaint in the District of Oregon ("2013 District Court Action") requesting that the court declare the Walker Mountain lease cancelled and the United States the legal owner of the structures and improvements on the site. GA 85–89. Western Radio brought a counterclaim under the Administrative Procedure Act ("APA"). GA 92. On April 28, 2014, the district court granted the Forest Service's motion for summary judgment, declaring that (1) the Walker Mountain lease was properly revoked and was cancelled, and (2) the revocation of the lease did not violate the APA. GA 90–115. Western Radio appealed. GA 122. The district court rejected Western Radio's request to stay the judgment pending direct appeal but agreed to a stay pending resolution of the appeal in the 2011 District Court Action. GA 123 (ECF No. 73) (staying case until issuance of mandate in related appeal, if defendant did not prevail in such appeal). In 2016, the United States Court of Appeals for the Ninth Circuit affirmed the district court's decision in the 2013 District Court Action. *See United States v. W. Radio Servs. Co.*, 664 F. App'x 677, 679 (9th Cir. 2016).

Contemporaneously, the appeal of the district court's decision in the 2011 District Court Action for breach of contract and trespass was also moving through the appellate process. On July 24, 2014, the Ninth Circuit held that the district court correctly granted summary judgment to the Forest Service on its breach of contract and trespass claims, and did not abuse its discretion in ordering removal of the new tower. GA 129–30. The Ninth Circuit's mandate issued on December 4, 2014. GA 131. The district court thereafter extended the stay of the judgment in the 2011

District Court Action pending Western Radio's appeal to the United States Supreme Court.  GA 140.  The court lifted the stay on April 30, 2015, after the Supreme Court denied Western Radio's petition for a writ of certiorari, and ordered Western Radio to complete removal of the new tower by August 15, 2015.  *Id.*  Western Radio thereafter removed the new tower, but it did not take down the original tower.  GA 292–93.

Following the issuance of the Ninth Circuit mandate in December 2014, the Forest Service attempted to enforce the revocation of the Walker Mountain lease consistent with the judgment in the 2013 District Court Action.  The Department of Justice (as counsel for the Forest Service) sent Western Radio a letter dated December 16, 2014, directing it "to remove all structures and improvements by June 15, 2015," or else the Government would "take control of the site and exercise [its] rights as owners of the property."  GA 132.  That deadline came and went.  Despite a July 2, 2015 letter extending the deadline to August 15, 2015, Western Radio continued its presence at the site and failed to remove the original tower.  GA 141.  Finally, on August 21, 2015, the Forest Service changed the locks on the original tower at Walker Mountain.  GA 142.  On September 4, 2015, the Forest Service gave Western Radio access to the original tower to remove the items inside, which it did aside from a generator and items belonging to one of Western Radio's tenants.  GA 144, 294–95.  On September 10, 2015, the Forest Service removed the original tower from Walker Mountain.  GA 144.

*Round Mountain, Gray Butte, and Sugar Pine Butte*.  The other three sites at issue in this case follow a similar story.  The Round Mountain lease began in 1996 and was terminated in 2001, though Western Radio remained on the property for about 11 years as a holdover tenant.  GA 44, 178.  On December 10, 2012, the Forest Service sent Western Radio a noncompliance notice based on an August 2012 inspection of the tower facility.  GA 175–77.  On December 28, 2012, the Forest

Service notified Western Radio that it would not continue to accept the company's status as a holdover tenant.  GA 178.  It advised that the holdover status would officially end on December 31, 2013, unless Western Radio obtained a new lease.  *Id.*  Western Radio thereafter applied for a new lease, but the Forest Service rejected its proposals.  GA 180 (April 4, 2013 denial due to incompleteness), 181 (December 13, 2013 denial due to Western Radio's failure to meet screening criteria).  On January 30, 2014, the Forest Service sent Western Radio a letter directing it to remove all structures and improvements at Round Mountain by July 31, 2014.  GA 183.  As with Walker Mountain, the letter advised that, per section V.B. of the lease, all property remaining after July 31, 2014, would become the property of the United States and may be removed without liability to the United States.  *Id.*

In 1999, the Forest Service likewise issued a communications lease to Western Radio at Gray Butte.  GA 6–12.  The lease expired in 2006, after which the Forest Service accepted Western Radio as a holdover tenant—just as it had at Round Mountain—for more than six years.  GA 156.  On December 28, 2013, the Forest Service informed Western Radio that it would no longer continue to accept the company as a holdover tenant.  *Id.*  A few days later, in a December 31, 2013 letter, the Forest Service rejected Western Radio's proposal for a new lease for failure to meet the screening criteria.  GA 158.  Following a similar pattern as the non-renewal of the Round Mountain lease, in a January 30, 2014 letter, the Forest Service directed Western Radio to remove all structures and improvements on the Gray Butte site by July 31, 2014, and specified that if the structures were not removed by that date, they would become the property of the United States and may be removed without liability to the United States consistent with section V.B. of the lease. GA 160.

Finally, the Forest Service issued the Sugar Pine Butte lease on January 20, 2004.  GA 13. After sending Western Radio two notices of noncompliance for failure to annually report tenants using the facility, which Western Radio failed to cure, the Forest Service revoked the lease on February 14, 2014.  GA 164, 166.  As with the other sites, the Forest Service directed Western Radio to remove all structures and improvements at Sugar Pine Butte, setting a deadline of May 1, 2014.  GA 164.  This was consistent with the 120-day period provided for in section V.B. of the lease.  *Id.*  The Forest Service similarly advised that failure to meet the removal deadline would result in the United States obtaining ownership of the structures and improvements, per the terms of the lease and 36 C.F.R. § 251.60(i).  *Id.*  Western Radio filed an administrative appeal of this decision on March 28, 2014.  GA 232.  On June 26, 2014, the Forest Service denied the appeal. GA 170.  The Acting Regional Forester affirmed the decision to revoke the lease on July 23, 2014, in an additional discretionary review.  GA 172.

Western Radio sued the Forest Service in the District of Oregon on May 5, 2014 ("2014 District Court Action"), alleging that the Forest Service violated the APA when it failed to renew or revoked the leases at Round Mountain, Gray Butte, and Sugar Pine Butte and, in the alternative, pleading a *Bivens* claim.  GA 187–98.  The Forest Service asserted counterclaims for trespass and unjust enrichment at all three sites.  GA 212–20.  On or around October 20, 2015, while the suit was still pending, the Forest Service changed the locks on the towers at Round Mountain, Gray Butte, and Sugar Pine Butte, barring Western Radio's access to the facilities.  GA 221.

About a month later, on November 24, 2015, the district court granted the Forest Service's motion for summary judgment and a few weeks later, on December 18, 2015, issued a permanent injunction, requiring Western Radio to remove all its property from the three sites.  GA 246–49. As to timing, the court's order required removal within 14 days of the Forest Service's providing

written notice, but the court specified that such notice should not be given prior to May 15, 2016. GA 248. If not timely removed, any remaining facility became "the property of the United States." *Id.* As with the other suits, Western Radio appealed, but this time no stay pending appeal was granted. The Ninth Circuit ultimately affirmed the district court's decision to issue an injunction ordering the removal of Western Radio's facilities. *See W. Radio Servs. Co. v. Allen*, 716 F. App'x 660, 661 (9th Cir. 2018).

Consistent with the district court's judgment, on June 22, 2016, the Department of Justice gave Western Radio notice to remove its facilities from Round Mountain, giving it a final removal deadline of July 6, 2016—greater than the 14 days required by the court. GA 264–65. As of August 11, 2016, Western Radio had removed one building from Round Mountain, but its tower, cement foundation, and other equipment remained. GA 262–63. With respect to Sugar Pine Butte, the Forest Service provided its 14-day notice on July 6, 2016, giving Western Radio until July 20, 2016, to remove its facilities from the site. GA 278–79. As of August 12, 2016, Western Radio had removed two of its buildings and one of its towers at Sugar Pine Butte but had failed to remove the concrete foundations and electrical connections. GA 276. Finally, in a July 15, 2016 letter, the Deparment of Justice gave Western Radio 14-days' notice to remove its facilities at Gray Butte, setting a removal deadline of August 1, 2016. GA 268–69. As of August 11, 2016, Western Radio had removed some of its facilities from Gray Butte, but its buildings, towers, and cement foundation remained. GA 262. The record includes photographic evidence of the various buildings and equipment previously belonging to Western Radio at each of the three sites as of August 2016. GA 266–67, 270–73, 280–82.

It is not clear exactly when the Forest Service physically removed the property remaining at the three sites. The Government's counsel represented at oral argument that the remaining

structures at Gray Butte and Round Mountain were removed by the Forest Service "after August 2016." Oral Arg. Tr. at 32:3–25, ECF No. 45. At Sugar Pine Butte, however, the record suggests that concrete foundations, electrical and other utility connections, and debris remained on the site, and it is unclear if they were ever removed by the Forest Service. GA 311–12.

### B.     Procedural Background

The present litigation arises out of disputes between Western Radio and the Forest Service about the Forest Service's changing the locks on and ultimately removing the tower facilities at the four sites. Western Radio alleges that the Forest Service physically took the tower facilities that Western Radio built and that the Government failed to provide just compensation for these takings. Pl.'s Am. Compl. ¶¶ 9–10, ECF No. 18. Because of the taking, Western Radio alleges it was unable to sell the tower facilities. *Id.* ¶ 19. It seeks $2.3 million in damages, which is the amount for which Western Radio allegedly could have sold the tower facilities. *Id.* ¶ 20.

On July 28, 2021, Western Radio filed an initial Complaint, alleging both breach of contract and takings claims. *See* Pl.'s Compl., ECF No. 1. On December 13, 2021, the Government filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *See* Gov't's Mot. to Dismiss, ECF No. 9 (also moving under Rule 12(b)(1) to dismiss breach of contract claim for lack of jurisdiction). In response to the Motion, Western Radio sought leave to amend its Complaint to eliminate its breach of contract claim, acknowledging that a plaintiff in the Court of Federal Claims cannot simultaneously claim that the Government acted in violation of a lease obligation and also effected a taking of a plaintiff's property, since a takings claim requires that the Government's actions be lawful. *See* Pl.'s Resp. to Mot. to Dismiss at 9–10, ECF No. 13. On December 20, 2022, the Court denied the Government's Motion to Dismiss as moot and ordered Western Radio to file an Amended Complaint. *See* Order Den. Mot. to Dismiss, ECF No. 17.

9

Western Radio filed an Amended Complaint on January 10, 2023, removing its breach of contract claims. *See* ECF No. 18. The Government filed an Answer on February 7, 2023, and after completion of discovery, moved for summary judgment on April 22, 2024. *See* Answer, ECF No. 20; Gov't Mot. for Summ. J., ECF No. 39. It argues that the Government is entitled to judgment as a matter of law because Western Radio had no cognizable property interest in the tower facilities upon which a taking claim can be premised. *See* ECF No. 39 at 18. Western Radio filed its Response on June 7, 2024, and the Government replied on June 20, 2024. *See* Pl.'s Resp. to Mot. for Summ. J., ECF No. 41; Gov't's Reply, ECF No. 42. The Court held oral argument on November 13, 2024. The motion is therefore ripe for decision.

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A fact is material when it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine when a finder of fact may reasonably resolve factual issues in favor of either party. *Id.* at 250.

"When deciding a summary judgment motion, all of the nonmovant's evidence is to be credited, and all justifiable inferences drawn in the nonmovant's favor." *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 671 (Fed. Cir. 2000) (citing *Anderson*, 477 U.S. at 255); *see Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994). The Court need not limit its review to materials only cited by the moving party when considering a summary judgment motion. *See* RCFC 56(c)(3). The Court "has discretion to consider other materials in the record when making its determination." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2721 (4th ed.).

The moving party bears the burden of proving the absence of a genuine dispute of material fact but "may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case." *Dairyland Power*, 16 F.3d at 1202 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party meets its initial burden, the burden shifts to the nonmoving party to set out specific facts showing a genuine issue for trial. *See Anderson*, 477 U.S. at 250. The nonmoving party may not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### III. DISCUSSION

Based on a review of the leases, the prior district court litigation, the applicable regulations, and other relevant evidence submitted by the parties, the Court finds that there is no genuine issue of material fact in dispute. Even taken in the light most favorable to it, Western Radio did not possess any cognizable property interest in the tower facilities at Walker Mountain, Round Mountain, Gray Butte, or Sugar Pine Butte at the times of the alleged takings. Thus, no triable issue remains in this case, and the Government is entitled to judgment as a matter of law because it did not effectuate any taking of Western Radio's property.

A.    **Western Radio Cannot Show a Cognizable Fifth Amendment Property Interest Taken By the Government.**

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation."  U.S. Const. amend. V.  Such takings can be physical or regulatory.  *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021).  In this case, Western Radio alleges a physical taking.  ECF No. 18 ¶¶ 9–10 (alleging that the Forest Service "physically took possession of" the facilities at the four sites in question).

A physical taking "occurs when government action physically occupies or invades property."  *Cheyenne River Sioux Tribe v. United States*, 172 Fed. Cl. 634, 650 (2024) (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982)); *see Forest Props., Inc. v. United States*, 177 F.3d 1360, 1364 (Fed. Cir. 1999) (describing a physical taking as "when the government itself occupies the property or 'requires the landowner to submit to physical occupation of its land'" (quoting *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992))).  A physical taking can also occur when the Government infringes upon one or more of a plaintiff's property rights, including, for example, "when the owner is deprived of use of the property."  *Petro-Hunt, LLC v. United States*, 862 F.3d 1370, 1380 (Fed. Cir. 2017); *see also Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027 (1992) ("'[T]akings' jurisprudence . . . has traditionally been guided by the understandings of our citizens regarding the content of, and the State's power over, the 'bundle of rights' that they acquire.").

In deciding a takings case, the Court must first determine "whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking."  *Acceptance Ins. v. United States*, 583 F.3d 849, 854 (Fed. Cir. 2009); *see Resource Invs., Inc. v. United States*, 85 Fed. Cl. 447, 478 (2009) ("Before assessing plaintiffs' categorical takings claim, this court must, as a threshold matter, determine whether plaintiffs possessed a property

12

interest protected by the Fifth Amendment.").  Only after determining whether a plaintiff possessed

a valid property interest can the Court turn to the question of "whether that property interest was

taken."  *Acceptance Ins.*, 583 F.3d at 854.

Here, Western Radio alleges that its property interest was taken when the Forest Service

changed the locks on the tower facilities at the various sites in question.  *See* ECF No. 41 at 12.

Alternatively, Western Radio alleged at oral argument that the takings occurred when the Forest

Service later physically removed the tower facilities from the sites.  *See* ECF No. 45 at 21:22–

22:6.  Western Radio, however, is not clear about exactly what property interest the Government

allegedly "took."  *See* ECF No. 41 at 2, 12;  ECF No. 45 at 21:14–18.  In the Court's view, there

are two potential property interests at issue in this takings case: first, Western Radio's right to do

business at the sites in question, and second, Western Radio's ownership right in the physical

property—*i.e.*, the tower facilities themselves—at the sites.  Each is a property interest that could

be the subject of a Fifth Amendment taking.  *See, e.g.*, *Sun Oil Co. v. United States*, 572 F.2d 786,

818 (Ct. Cl. 1978) ("As a general proposition, a leasehold interest is property, the taking of which

entitles the leaseholder to just compensation for the value thereof."); *United States v. Gen. Motors

Corp.*, 323 U.S. 373, 377–78 (1945) (holding that the Fifth Amendment protects rights to possess,

use, and dispose of physical property).  At oral argument, Western Radio clarified its position and

described the property interest at issue as "the resale value" of the towers, suggesting that it was

the combination of the leasehold rights and the physical tower facilities.  *See* ECF No. 45 at 18:18–

20:7.

Regardless of how the property interest is defined, neither the Forest Service's changing of

the locks nor its removal of the towers constituted a taking because Western Radio had lost the

relevant property rights by the times of those government actions.  If the property interest is defined

13

as the right to do business at the sites, an alleged taking would have occurred if the Forest Service changed the locks on the tower facilities when Western Radio still possessed its right to operate at those facilities, because changing the locks barred Western Radio from accessing and operating them. *See, e.g.*, *Lucas*, 505 U.S. at 1017 ("[T]otal deprivation of beneficial use is . . . the equivalent of a physical appropriation."). Alternatively, if the property interest is defined as the ownership right in the physical towers, an alleged taking would have occurred if the Forest Service had physically removed the tower facilities when they were still owned by Western Radio. *See, e.g.*, *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005). There is no evidence in the record that either of those scenarios occurred; indeed, the evidence before the Court demonstrates the contrary. The Court reaches this conclusion by first analyzing the sources of law that establish the parties' respective rights and obligations at the sites—*i.e.*, the Communications Leases, applicable regulations, and court orders—and then by assessing the undisputed facts surrounding the revocation and non-renewal of the leases.

> 1.    The Communications Leases, Applicable Regulations, and Court Orders Define the Property Interests at Issue.

The property interests at issue in this case are primarily defined by contracts. As the Federal Circuit's predecessor court explained, the Fifth Amendment "has limited application to the relative rights in property of parties litigant which have been voluntarily created by contract." *J.J. Henry Co. v. United States*, 411 F.2d 1246, 1249 (Ct. Cl. 1969). This is, in part, because the rights and responsibilities of parties to a contract are generally laid out in the contract itself, including what happens in the event of a breach, non-renewal, or revocation. Because the property rights at issue in this case are definitively governed by the lease contracts, the property interest analysis for the purpose of these takings claims can largely be resolved through reference to the lease contracts. *Compare Integrated Logistics Support Sys. Int'l, Inc. v. United States*, 42 Fed. Cl. 30, 34–35 (1998)

(acknowledging that, if the "transfer of property to the Government" occurred "pursuant to a lawfully executed bilateral agreement, the Government cannot be compelled to render just compensation for the alleged taking of such property" but declining to dismiss a takings claim because the court could not determine whether the contract addressed the rights at issue), *with Commonw. Edison Co. v. United States*, 56 Fed. Cl. 652, 656 (2003) (dismissing plaintiff's argument that its "real property rights" were "separate and distinct" from its contractual rights).

Each of the leases corresponding to the four sites in question spells out the rights and responsibilities of the Forest Service and Western Radio. GA 1–50. The question of whether the Forest Service followed the correct contractual procedures as to revocation and non-renewal was extensively litigated—and affirmatively answered—in district court. GA 58–76, 90–115, 222–46. In addition, the regulatory scheme further defines the rights and obligations of parties who, like Western Radio, are authorized by the Forest Service to conduct business on federal land. The regulations provide that any commercial use of National Forest System lands requires special use authorization by the Forest Service. 36 C.F.R. § 251.50(a) (2004). Such authorization may be terminated, revoked, or suspended, in which case "the holder must remove within a reasonable time the structures and improvements and shall restore the site to a condition satisfactory to the authorized officer." 36 C.F.R. § 251.60(i) (2010). "If the holder fails to remove the structures or improvements within a reasonable period, as determined by the authorized officer, they shall become the property of the United States, but holder shall remain liable for the costs of removal and site restoration." *Id.*

As discussed below, these sources of law—the leases, the regulations, and the prior litigation as to the proper revocations and non-renewals of the leases—make clear that there is no dispute of materal fact in this case.

2.    <u>The Undisputed Facts Show that Western Radio Did Not Have a Fifth Amendment Property Interest at Any Site at the Times of the Alleged Takings.</u>

By the time the Forest Service acted to bar Western Radio from its tower facilities at each site and by the time it physically removed the remaining facilities, Western Radio did not possess any compensable property rights within the meaning of the Fifth Amendment.  This is true whether the property interest is considered to be Western Radio's right to do business at the tower facilities or its interest in the physical structures.

a.    *By August and October 2015, Western Radio Had Lost the Right to Do Business at the Four Sites, so the Changing of Locks on the Towers Was Not a Taking.*

Although "[t]aking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity," *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001), there are some circumstances in which government acts concerning contracts can constitute a taking.  Binding precedent has found that a government agency breaking or changing locks on a plaintiff's private property constitutes a taking, but only when the plaintiff still had a property interest in the property at the time of the locks being changed.  *See Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1582 (Fed. Cir. 1993) (explaining that "physical invasion—complete with broken locks at early morning hours" constituted "a substantial physical intrusion" amounting to a taking).  The distinction here is that, by operation of the revocation and non-renewal decisions (which were all affirmed by court orders), Western Radio had lost any right to do business or to continue operating at Walker Mountain, Round Mountain, Gray Butte, and Sugar Pine Butte at the times that the Forest Service changed the locks on the tower facilities.

*Walker Mountain*.  As with each of the four sites in question, the relative rights of the parties at Walker Mountain were governed by the terms of the lease between the Forest Service and Western Radio.  The Forest Service revoked that lease on February 4, 2013.  GA 77.  Because

any commercial use of the site required special use authorization by the Forest Service, *see* 36 C.F.R. § 251.50(a) (2004), revocation of the lease meant Western Radio lost its right to do business at the site—including at the original tower—"effective immediately."  GA 77.

Although Western Radio filed suit challenging the revocation decision, the District of Oregon entered judgment in the Forest Service's favor on April 28, 2014, finding the Walker Mountain lease properly revoked and cancelled.  GA 114–16.  That judgment was stayed, but only pending appeal of the decision in Western Radio's 2011 District Court Action involving breach of contract and trespass.  GA 123.  The Ninth Circuit's mandate in that appeal issued on December 4, 2014.  GA 131.  Western Radio fully exhausted its appeal rights in the 2011 District Court Action as of April 30, 2015, when the Supreme Court denied Western Radio's cert petition.  GA 140. Thus, Western Radio lost its right to do business at the original tower well before August 21, 2015, when the Forest Service changed the locks.[3]  GA 141.

Both the lease revocation and the court order establish that Western Radio had no right to do business at the original tower at Walker Mountain by the time the Forest Service changed the locks.  Without establishing a relevant property right at the time of the alleged taking—here, the changing of the locks—Western Radio cannot establish the threshold element of a Fifth Amendment taking.  *Resource Invs.*, 85 Fed. Cl. at 478.

*Round Mountain, Gray Butte, and Sugar Pine Butte*.  Similarly, the Government revoked the Sugar Pine Butte lease on February 14, 2014.  GA 164.  It terminated Western Radio's holdover

---

[3] That Western Radio's appeal of the district court's order affirming the Forest Service's revocation decision was still pending in the Ninth Circuit at the time the Forest Service changed the locks on the original tower at Walker Mountain is of no moment.  The district court entered final judgment in the 2013 District Court Action, and it declined to stay the judgment pending direct appeal.  GA 116.  In any event, the Ninth Circuit ultimately affirmed.  *See United States v. W. Radio Servs. Co.*, 664 F. App'x 677, 679 (9th Cir. 2016).

status at Round Mountain and Gray Butte on December 13, 2013, and December 31, 2013, respectively. GA 156, 178. Accordingly, Western Radio's right to do business at each of the three sites was terminated. GA 156, 164, 178; *see* 36 C.F.R. § 250.50(a) (2004); 36 C.F.R. § 250.60(a)(2) (2010). For Round Mountain and Gray Butte, the termination date was December 31, 2013. GA 156 (advising Western Radio that Round Mountain lease expired and holdover status "will not be continued after December 31, 2013"), 178 (same as to Gray Butte); *see* GA 158, 181 (December 31, 2013 letters declining to renew leases at Gray Butte and Sugar Pine Butte). For Sugar Pine Butte, the date was February 14, 2014. GA 164 (revoking Sugar Pine Butte lease "effective immediately").

As with Walker Mountain, Western Radio's legal challenge to the revocation and non-renewal decisions at Round Mountain, Gray Butte, and Sugar Pine Butte failed. Although the Forest Service changed the locks of the towers at the three sites about one month before the district court granted summary judgment in the 2014 District Court Action, the court ultimately upheld the decisions on APA review and found that Western Radio was trespassing at all three sites. GA 230, 232–33, 237, 240. The Ninth Circuit affirmed. *See W. Radio Servs. Co., Inc. v. Allen*, 716 F. App'x 660, 661 (9th Cir. 2018). Western Radio, therefore, also cannot establish the threshold element of a Fifth Amendment taking with respect to these sites at the time the Forest Service changed the locks. *Resource Invs.*, 85 Fed. Cl. at 478.

> b. *By September 2015 and August 2016, Western Radio Had No Cognizable Property Interest in the Tower Facilities at the Four Sites, so the Forest Service's Removal of the Tower Facilities Was Not a Taking.*

With respect to the removal of the physical tower facilities, the material property interest is ownership. While Western Radio lost the right to conduct business at the sites once its leases were revoked or expired (and not renewed), those decisions did not in themselves transfer ownership of the physical towers to the Government. Rather, as contemplated by the leases, the

18

revocation and non-renewal decisions, the applicable regulation, and the judgment in the 2014 District Court Action, the Forest Service provided Western Radio with a reasonable period to remove its structures and improvements. Failure by Western Radio to timely complete removal resulted in the Government obtaining ownership.

*Walker Mountain*. With respect to removal of the physical structures, the only tower at Walker Mountain at issue is the original tower.[4] By operation of both the lease terms regarding revocation and 36 C.F.R. § 250.60(i) (2010), the Forest Service obtained ownership of the original tower prior to removing it on September 10, 2015. The lease specified that in the event of revocation, ownership of the structures and improvements would pass to the Government if Western Radio did not remove them within an unspecified number of days. GA 4 (indicating a blank space in the contractual term specifying the number of days for removal). Since no specific time was made part of the lease, "performance within a reasonable time . . . [was] required." *Asco-Falcon II Shipping Co. v. United States*, 32 Fed. Cl. 595, 602 (1994) (quoting *B-E-C-K Constructors v. United States*, 215 Ct. Cl. 793, 801 (1978)). The same provision is reflected in the applicable regulation, which provides that after the revocation of a special use authorization by the Forest Service, a holder must remove its structures and improvements "within a reasonable time." 36 C.F.R. § 251.60(i) (2010). Failure "to remove the structures or improvements within a reasonable period, as determined by the authorized officer[,]" results in their "becom[ing] the property of the United States." *Id.*

Here, the Walker Mountain lease was revoked on February 4, 2013. GA 77. Western Radio was initially given until July 1, 2013, to remove all structures and improvements from the site. *Id.*

---

[4] The structures related to the new tower on Walker Mountain—which was the subject of the 2011 District Court Action—were removed by Western Radio pursuant to the district court's injunction. GA 76, 140, 192.

19

After Western Radio failed to comply, the Forest Service successfully obtained a judgment in the 2013 District Court Action, declaring that the Forest Service had properly revoked the lease. GA 114–16. Once the stay of the judgment lifted on December 4, 2014, the Forest Service notified Western Radio that it was required to remove all structures and improvements (to include the original tower) on Walker Mountain by June 15, 2015. GA 132. The Forest Service subsequently granted an extension until August 15, 2015. GA 141. Western Radio does not dispute that this was a reasonable period to effect removal. *See* ECF No. 45 at 26:25–27:1 ("I haven't disputed that a reasonable time hasn't been provided"). Nor does it dispute that it failed to remove the original tower by the deadline. GA 293. When Western Radio failed to remove the original tower by August 15, 2015, the ownership interest in that tower passed to the Government by operation of law. *See* GA 4; *see also* 36 C.F.R. § 250.60(i) (2010). The Government's ownership of the original tower at the time of its removal on September 10, 2015, is clear based on the lease's terms and the regulation. Accordingly, there is no genuine dispute of material fact that Western Radio did not have a property right to be "taken" at the facility in question at the time of the alleged taking. *Sun Oil*, 572 F.2d at 818 ("[T]he interferences with plaintiffs' lease rights were grounded on matters that, at times material herein, bespoke an effort to operate within the framework of the lease and applicable regulations, not to take plaintiffs' property rights.").

*Round Mountain, Gray Butte, and Sugar Pine Butte*. As to the physical tower facilities at the other three sites, Western Radio fails to dispute any material fact that would make their removal by the Government a taking. As with Walker Mountain, each of the Forest Service's letters notifying Western Radio of the revocation and non-renewal of its leases set a period for Western Radio to remove the structures and improvements at the sites, and advised that ownership would pass to the Government if Western Radio failed to timely comply. GA 156–57 (Gray Butte non-

renewal notice), 164–65 (Sugar Pine Butte revocation notice), 178–79 (Round Mountain non-renewal notice). While the court in the 2014 District Court Action found that ownership did not transfer at the expiration of those periods due to the pending litigation at the time, GA 242–43, it enjoined Western Radio to remove all facilities at the three sites within 14-days' written notice by the Forest Service, sent no earlier than May 15, 2016, and ordered that "[a]ny facility remaining at a site after a 14 day notice shall be the property of the United States[,]" GA 248 (declaring that "[t]he United States is the owner of any facilities that are not removed by Western Radio, as required by the permanent injunction below").

The Forest Service complied with the notice requirements, providing removal periods that expired on July 6, 2016 (Round Mountain), July 20, 2016 (Sugar Pine Butte), and August 1, 2016 (Gray Butte). GA 250–59. It is undisputed that Western Radio failed to timely remove its tower facilities in accordance with the injunction.[5] Title to the towers and facilities at the three sites therefore passed, by court order, to the United States by no later than August 1, 2016. GA 248 ("The United States is the owner of any facilities that are not removed by Western Radio."). Accordingly, when the Forest Service finally removed the physical structures from the three sites, Western Radio did not own them.

Furthermore, for at least one of the three sites, Western Radio conceded that title to the facilities passed to the Government prior to their removal. When asked in deposition whether the Forest Service or Western Radio owned the facilities that Western Radio had not removed at the

---

[5] Furthermore, Western Radio acknowledges that the Forest Service gave Western Radio ample notice to remove its radio service towers over multiple years of this dispute. *See, e.g.*, ECF No. 45 at 25:14–23 (Western Radio's counsel explaining, "I mean, how many notices did they send? They sent, you know, 30 or 40 of them."). Accordingly, there is no colorable argument that Western Radio did not receive notice or have adequate time to arrange for the removal of its property before the Government assumed ownership.

Sugar Pine Butte site in July 2016, Mr. Richard Oberdorfer, Western Radio's principal, responded that "Western Radio constructed them, but at that time, the Forest Service owned all those facilities, including the concrete foundations." GA 312. Western Radio admitted that title to the facilities at Sugar Pine Butte had passed to the Government prior to their removal. Without a cognizable property right in the physical structures at the times of their respective removal, Western Radio has no actionable takings claim. *See Knick*, 588 U.S. at 185.

*    *    *

In sum, the undisputed evidence shows that Western Radio had no right to do business at the tower facilities at Walker Mountain, Round Mountain, Gray Butte, or Sugar Pine Butte at the time the Forest Service changed the locks on them, and had no ownership interest at the time the Forest Service removed them. *See Dairyland Power*, 16 F.3d at 1202. For these reasons, the Government has "satisfied its burden as the moving party on a motion for summary judgment by showing that there is an absence of evidence to support [Western Radio's] case and that the Government is entitled to summary judgment as a matter of law." *Id.* at 1203–04.

### B.    Western Radio Cannot Show a Genuine Factual Dispute.

In a motion for summary judgment, after the moving party meets the burden of establishing the absence of any genuine issues of material fact, "the burden shifts and the nonmovant must point to sufficient evidence to show a dispute exists over a material fact allowing a reasonable fact finder to rule in its favor." *Price v. United States*, 156 Fed. Cl. 281, 287 (2021) (citing *Anderson*, 477 U.S. at 256). Here, Western Radio identifies two purported factual disputes: (1) whether the Government can establish the exact date on which it obtained ownership of the tower facilities, and (2) the valuation of the tower facilities. But it has not pointed to sufficient evidence to show that a material factual dispute exists, and "evidence that is merely colorable or not significantly

probative will not defeat summary judgment." *Celotex*, 477 U.S. at 324. For the following reasons, Western Radio's arguments fail.

1.    There Is No Genuine Dispute of Material Fact as to the Ownership of the Towers at the Times of the Alleged Takings.

Western Radio's first alleged dispute as to ownership relies on court orders in the prior litigation. *See* ECF No. 41 at 10–12. It alleges that the court's summary judgment decision in the 2014 District Court Action was entered in November 2014, about one month *after* the Forest Service changed the locks on the tower facilities at Round Mountain, Gray Butte, and Sugar Pine Butte, and the decision specifically refused to recognize the Government as the owner of the facilities at that time. *Id.* at 11–12. It also points out that the amended judgment in the 2011 District Court Action did not order the removal of the original tower on Walker Mountain, nor did the court recognize the towers at Walker Mountain as the property of the Government as of its decision dated April 28, 2014. *Id.* at 10–11. While true, these facts are immaterial. *See Anderson*, 477 U.S. 247 at 2510 ("Factual disputes that are irrelevant or unnecessary will not be counted.").

The date of the district court's judgment in the 2014 District Court Action is not relevant. That litigation did not make new determinations of rights with respect to the leases; it merely affirmed under APA review that the Forest Service's prior revocation and non-renewal decisions as to the three sites were valid. GA 230, 232, 237. Those decisions were immediately effective, and the summary judgment ruling is simply proof that the decisions continued to be effective as of that date. Moreover, although the district court's December 2015 judgment did not declare that the United States owned the facilities at Round Mountain, Sugar Pine Butte, and Gray Butte, it did order that "[a]ny facility remaining at [one of the sites] after a 14 day notice shall be the property of the United States." GA 248. The Forest Service complied with the notice procedures in the order, and removed the facilities only after Western Radio failed to comply.

Western Radio's argument with respect to the original tower at Walker Mountain is also easily dispensed with. Western Radio claims that the district court never ordered removal of the original tower, and therefore ownership of such tower was "never in doubt." ECF No. 41 at 11. But this argument focuses solely on the 2011 District Court Action for breach of contract and trespass related to the 2010 improvements at Walker Mountain. *See id.* The 2013 District Court Action challenging the revocation of Western Radio's lease is the relevant litigation with respect to the original tower, as revocation eliminated Western Radio's right to do business at *any* tower facility on Walker Mountain. GA 115, 116. Having obtained a judgment declaring that the Forest Service properly revoked the lease, the Forest Service's subsequent actions with respect to the original tower lawfully flowed from the terms of the lease (and the applicable regulation) governing revocation and removal of structures, not the amended judgment in the 2011 District Court Action. *See* GA 4, 114–16; *see also* 36 C.F.R. § 250.60(i) (2010).

Next, Western Radio argues that factual disputes exist because the Government has not definitively proven the exact date on which the ownership interest in the towers passed to the Government. *See* ECF No. 41 at 2; *see* ECF No. 45 at 25:12–13 ("[T]here is no date on which the Government says 'this is ours now.' There's no notice."). Western Radio cites no caselaw to support the proposition that such a showing is necessary. Rather, the material date for determining a cognizable interest in property subject to a takings claim is the date of the alleged taking. *Acceptance Ins.*, 583 F.3d at 854. Moreover, ownership is immaterial for purposes of determining whether Western Radio had a right to do business at the sites at the time the Forest Service changed the locks, which implicates one aspect of Western Radio's takings theory. Each of the leases contemplated that, following revocation or non-renewal, Western Radio would be given the opportunity to remove its property before ownership passed to the Forest Service. GA 4 (Walker

Mountain), 11 (Gray Butte), 16 (Sugar Pine Butte), 49 (Round Mountain).  But that did not change the fact that Western Radio's right to use and conduct business at the sites was terminated once the leases were revoked or not renewed.  All that the Government must show is that Western Radio undisputably did not have such property interest in the towers at the time the Forest Service changed the locks.  *Acceptance Ins.*, 583 F.3d at 854.  It has made that showing.

Finally, at oral argument, Western Radio attempted to argue that it retained some cognizable property interest in the tower facilities by referencing an "agreement" between it and the Forest Service that the parties allegedly reached at a January 10, 2013 mediation.  *See* ECF No. 45 at 17:5–19.  According to Western Radio, this "agreement" would have allowed Western Radio to sell the towers to a third-party, with the new owner obtaining a valid lease with the Forest Service.  *See id.*  However, Western Radio failed to include any evidence of such an agreement in the record before this Court.  *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc) ("The party opposing the motion 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" (citing *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984))).  And it ultimately conceded at argument that this was "not an agreement" but rather "a mediation that never came together," and that the evidence to show for it would be at most "a couple of e-mails."  *Id.*

2.    Any Factual Dispute Regarding the Value of the Towers Is Not Material.

Western Radio alleges that factual disputes also exist with respect to valuation.  *See* ECF No. 45 at 18:5–10.  It claims that the tower facilities were worth $2.3 million at the times of the alleged takings.  ECF No. 18 ¶ 20.  The Government disputes this valuation on the basis that the potential buyer of the towers (K-2 Towers) backed out of negotiations with Western Radio in 2015 when they learned about various issues with the leases, including disputes with the Forest Service.  ECF No. 39 at 12; ECF No. 45 at 24:3–25:20.  Although there does seem to be a factual dispute as

to the value of the towers at the times of the alleged takings, valuation is immaterial because this Court has determined that no cognizable taking occurred in the first place. *Celotex*, 477 U.S. at 322–23 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

*        *        *

In sum, the factual disputes that Western Radio alleges are either immaterial or unsupported by law or by the facts in the record. Beyond a conclusory statement that its claim meets the standard for a taking, Western Radio has not explained, nor submitted evidence showing, a genuine dispute of material fact as to whether the Forest Service's actions constituted a taking under the Fifth Amendment.

## IV. CONCLUSION

Based on the foregoing, the Court finds that there is no genuine dispute of material fact in this case and the Government is entitled to judgment as a matter of law. Therefore, the Court **GRANTS** the Government's Motion for Summary Judgment (ECF No. 39). The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: February 19, 2025                              */s/ Kathryn C. Davis*
                                                      KATHRYN C. DAVIS
                                                      Judge